**FIRST STATE BANK, Successor in Interest to Community National Bank, Appellant,**

v.

**Ronald L. DORST and Clarice Dorst, Appellees.**

**No. 3–92–109–CV.**

Court of Appeals of Texas, Austin.

Dec. 23, 1992.

Rehearing Overruled Jan. 27, 1993.

Karen P. Davis, Richey & Young, P.C., Austin, for appellant.

Forest D. Cook, Austin, for appellees.

Before CARROLL, C.J., and JONES and KIDD, JJ.

JONES, Justice.

This is a usury case. First State Bank ("FSB"), appellant, sued Ronald and Clarice Dorst, appellees, to recover the remaining balance on two promissory notes, each secured by a deed of trust, and to obtain judgment allowing judicial foreclosure of the property securing the notes. The Dorsts counterclaimed that the deeds of trust were usurious on their face. The case was tried to the court on stipulated facts. The trial court concluded that the two deeds of trust were usurious and rendered judgment that the notes and the liens securing them be canceled; that the Dorsts recover their attorney's fees; and that FSB take nothing by its claim. On appeal, FSB complains in a single point of error that the trial court erred in concluding that the deeds of trust were usurious and in rendering judgment that FSB take nothing. We will reverse the judgment of the trial court and render judgment that the Dorsts take nothing on their counterclaim. We will remand the portion of the cause requesting judicial foreclosure to the trial court for further proceedings.

## BACKGROUND

FSB is the current owner and holder of two promissory notes executed by the Dorsts on July 12, 1982, and secured by two deeds of trust recorded in the real property records of Travis County, Texas. The notes provided for interest at the rate of 10.875%, with an increase to 11.875% on August 4, 1984. Both deeds of trust contained identical "sales clauses" whereby FSB was entitled to escalate the interest rate by not more than 2% if the property was sold during the term of the note. Neither property was ever sold. In addition, both deeds of trust contained identical "usury savings clauses" whereby FSB disclaimed any right to receive or collect interest in excess of the highest rate allowed by applicable law.

The Dorsts defaulted in the performance of their obligations under the notes and deeds of trust, and the parties agree that as of August 2, 1989, the amount of unpaid

principal and accrued interest on the notes was $62,776.79.

FSB acknowledges in its brief to this Court that since FSB filed this suit, the Dorsts have filed Chapter 7 bankruptcy and been discharged from any personal liability under the notes.

## DISCUSSION

In its only point of error, FSB complains that the trial court erred in concluding that the deeds of trust violated Texas usury statutes and in rendering judgment that FSB take nothing by its claim. *See* Tex. Rev.Civ.Stat.Ann. art. 5069–1.06 (West 1987). As reflected in its conclusions of law, the trial court concluded that the deeds of trust were usurious on their face and that the usury savings clauses did not cure such usury.

The Dorsts successfully argued in the court below that the sales clause included in each deed of trust evidenced a contract for usurious interest and, as a result, the savings clause would not allow FSB to escape usury penalties by disclaiming an intention to do what it had contracted to do. In essence, the Dorsts argued that the sales clause must be viewed independently from the savings clause when determining whether the loan documents constitute a contract for usurious interest.

■ The Dorsts' assertion that the deeds of trust are usurious on their face is based *solely* on the sales clause included in both deeds of trust, which states in pertinent part: "Grantor shall obtain Beneficiary's prior written approval of any sale of the real property herein described ... *and Beneficiary shall have the right to escalate the interest rate at not more than 2% per transaction....*" (Emphasis added.) The Dorsts rely on the general rule that a contract is usurious as a matter of law if there is *any contingency* by which the lender may receive more than the lawful rate of interest. *See Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 341 (Tex.1980); *Dixon v. Brooks*, 678 S.W.2d 728, 729 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). The Dorsts argue that the sales clause allowing the lender to escalate the

contractual interest rate by up to 2% for each sale of the property could result in an interest rate greater than that allowed by law. Accordingly, they argue, the unlimited nature of this clause makes the deeds of trust usurious as a matter of law.

As suggested by the Dorsts, it is true that *if* the properties were sold multiple times and *if* FSB increased the interest rate 2% each time, the interest rate could potentially exceed the rate allowed by applicable law. Thus, were we to view the sales clause in isolation and apply the general rule regarding contingencies, we might well determine that the deeds of trust were usurious based on this contingency provision.

We conclude, however, that the sales clause cannot be viewed in isolation. Rather, we must consider the contract as a whole in deciding whether it is usurious:

> [W]hen the contract by its terms, *construed as a whole*, is doubtful, or even susceptible of more than one reasonable construction, the court will adopt the construction which comports with legality. It is presumed that in contracting parties intend to observe and obey the law. For this reason the court will not hold a contract to be in violation of the usury laws unless, upon fair and reasonable interpretation of *all its terms*, it is manifest that the intention was to exact more interest than allowed by law.

*Smart*, 597 S.W.2d at 340–41 (quoting *Walker v. Temple Trust Co.*, 80 S.W.2d 935 (Tex.1935)) (emphasis added).

■ In addition to the sales clause, the deeds of trust at issue in the present case also contain identical savings clauses, which expressly provide:

> Nothing herein or in said note contained shall ever entitle Beneficiary, *upon the arising of any contingency whatsoever*, to receive or collect interest in excess of the highest rate allowed by the applicable laws on the principal indebtedness hereby secured or on any money obligation hereunder and in no event shall Grantors be obligated to pay interest thereon in excess of such rate.

(Emphasis added.) Texas courts, beginning with *Nevels v. Harris*, 129 Tex. 190, 102 S.W.2d 1046 (1937), have repeatedly acknowledged the validity of usury savings clauses and have, in appropriate circumstances, enforced such clauses to avoid a violation of the usury laws. *See Woodcrest Assoc. v. Commonwealth Mortgage Corp.*, 775 S.W.2d 434, 437–38 (Tex.App.—Dallas 1989, writ denied) (citing 49 years of case law supporting validity of savings clauses).

■ The Dorsts acknowledge that Texas courts view savings clauses favorably. They contend, however, that the trial court's judgment is correct because the mere presence of a savings clause in a contract will not rescue a contract that is usurious by its explicit terms. *Nevels*, 102 S.W.2d at 1050; *Woodcrest Assoc.*, 775 S.W.2d at 438. In analyzing the loan documents, the Dorsts argue that the deeds of trust are usurious by the explicit terms of the sales clause, because the operation of the clause is unlimited. In other words, there is no cap to the interest rates FSB may charge. Further, they argue that because the clause is usurious by its explicit terms, the savings clause cannot operate to cure such usury.

The Dorsts' reasoning is circular. They claim that the deeds of trust are explicitly usurious *because* the savings clause may not be considered. A savings clause is ineffective, however, only if it is *directly contrary* to the explicit terms of the contract. In *Nevels*, the supreme court stated:

> Of course we do not mean to hold that a person may exact from a borrower a contract that is usurious under its terms, and then relieve himself of the pains and penalties visited by the law upon such an act by merely writing into the contract a disclaimer of any intention to do that which under his contract he has plainly done.

*Nevels*, 102 S.W.2d at 1050. As a simple example, a creditor may not specifically contract for a 30% interest rate and then avoid the imposition of usury penalties by relying on a savings clause that declares an intention not to collect usurious interest.

In contrast, under the facts of the present case, the savings clause is *not* directly contrary to the explicit terms of the sales clause; rather, the savings clause supplements and explains the intent of the parties in contracting for the sales clause by limiting its application to nonusurious charges of interest.

The Texas Supreme Court has indicated that a savings clause may cure an open-ended contingency provision the operation of which *may or may not* result in a charge of usurious interest. *Smart*, 597 S.W.2d at 340–41. The *Smart* case involved a contract that was potentially usurious depending on the occurrence of a contingency—default in payment on a note. Under the terms of the note, the debtor had prepaid three years worth of interest. The creditor had specifically contracted for retention of unearned prepaid interest in the event of acceleration. Depending on when the default and acceleration occurred, such retention might or might not have resulted in the collection of usurious interest. In construing this contract, the court applied the general rule that a contract is usurious as a matter of law if there is any contingency by which the lender may receive more than the lawful rate of interest. However, rather than look at the clause that allowed the creditor to retain unearned interest in isolation, the court reviewed the contract *as a whole*. The court found the absence of a usury savings clause to be dispositive:

> Having affirmatively provided for the retention of unearned interest, [the creditor] was obliged to make further provisions ensuring that the retention of this interest would not result in a usurious transaction. *Neither the note nor the deed of trust, nor any of the other documents contains any kind of usury savings clause whatever. In the absence of a savings clause,* we find that [the creditor's] expressed authorization to retain excess unearned interest overcomes the presumption of legality accorded to allegedly usurious contracts.

*Smart*, 597 S.W.2d at 341 (emphasis added) (citation omitted).

This Court, too, has considered the validity of a usury savings clause in the context of a contingency-based usury claim. *See Affiliated Capital Corp. v. Commercial Credit Bank,* 834 S.W.2d 521 (Tex.App.—Austin 1992, no writ). In that case, the appellant claimed that a contingency that could possibly exact usurious interest made the contract usurious on its face and could not be cured by a savings clause. We rejected that claim, concluding that a savings clause will defeat a claim of usury where a contingency may or may not exact usurious interest. *Id.* at 526.

Applying this same analysis to the present case, it is obvious that occurrence of the contingency (sale of the property) would not *necessarily* have resulted in a usurious interest rate. Indeed, numerous sales would have been required before a usurious rate could even have been possible. Because usury was not a necessary result of the occurrence of the contingency, it is appropriate to construe the sales clause in light of the savings clause. Doing so makes clear the parties' intention that FSB not have the right to charge usurious interest in the event of multiple sales of the property securing the deeds of trust. The savings clause has the effect of "capping" the potential interest rate chargeable under the sales clause.

■ We do not believe that the Dorsts could prevail on their usury claim had the deeds of trust provided in a single sentence that "Beneficiary shall have the right to escalate the interest rate at not more than 2% per transaction; *however, in no event shall Beneficiary be entitled to escalate the interest to a rate in excess of the highest rate allowed by the applicable law."* Reading the sales clause and the usury savings clause together in the present case yields the same result. Usury statutes are penal in nature and, as a result, they must be strictly construed in such a way as to give the lender the benefit of the doubt. *Steves Sash & Door Co. v. Ceco Corp.,* 751 S.W.2d 473, 476 (Tex.1988); *PJM, Inc. v. Walter Clark Advertising, Inc.,* 624 S.W.2d 282, 285–86 (Tex.App.—Dallas 1981, writ ref'd n.r.e.). Under this long-standing rule of construction, we refuse to interpret the usury statutes so broadly as to allow imposition of the harsh usury penalties where the creditor's only "error" was to place a limiting clause in a separate paragraph of the loan documents instead of immediately following the contingency provision. We conclude, therefore, that as a matter of law the deeds of trust in the present case are not usurious. We sustain FSB's point of error.

We reverse that portion of the trial court's judgment cancelling the notes and deeds of trust and awarding the Dorsts attorney's fees and render judgment that the Dorsts take nothing by their counterclaim. We also reverse that portion of the trial court's judgment decreeing that FSB take nothing on its suit for judicial foreclosure; however, because of the paucity of information in this appellate record regarding the Dorsts' subsequent bankruptcy proceedings, we are reluctant to render judgment as to FSB's request for permission to judicially foreclose on the property securing the notes. Accordingly, we will, in the interest of justice, remand that portion of the cause to the trial court for further proceedings. *See* Tex.R.App.P. 81(c); *U.S. Fire Ins. Co. v. Carter,* 473 S.W.2d 2 (Tex. 1971).