COASTAL CEMENT SAND INC., Consolidated Carriers, Inc., and Southwest Texas Ready Mix Inc., Appellants,

v.

FIRST INTERSTATE CREDIT ALLIANCE, INC., Now Known As Orix Credit Alliance, Inc., Appellee.

No. 14–95–00867–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 10, 1997.

Rehearing Overruled Dec. 23, 1997.

Gary L. McConnell, Angleton, for appellants.

Douglas R. Little, Houston, for appellee.

Before YATES HUDSON and FOWLER, JJ.

## MAJORITY OPINION

YATES, Justice.

This is an appeal from an order granting summary judgment in favor of First Interstate Credit Alliance, Inc., now known as ORIX Credit Alliance ("ORIX"). Coastal Cement Sand, Inc., Consolidated Carriers, Inc., and Southwest Texas Ready Mix, Inc. (collectively appellants) filed suit against ORIX, alleging ORIX had contracted for usury. Appellants argue the trial court erred in granting summary judgment in favor of ORIX and in denying appellants' cross-motion for partial summary judgment because 1) ORIX failed to state explicitly any grounds for summary judgment in its motion, 2) the trial court relied on improper summary judgment evidence, and 3) the contract was usurious. We conclude the contract is usurious on its face, and we reverse the judgment of the trial court.

## Background

Between April 1984 and January 1991, each appellant executed a number of promissory notes and security documents in favor of ORIX. There are fifteen notes at issue in this appeal.[1] One of the loans was repaid in full, and the others were refinanced, in some cases more than once. Despite the presence of an acceleration clause in each of these notes, ORIX did not unilaterally accelerate the maturity of any of these notes. Each of the refinanced loans matured as a result of appellants' requests for refinancing, and ORIX collected only the principal and the accrued, earned interest. It never collected usurious interest.

Appellants sued ORIX, alleging that ORIX "contracted for" a usurious rate of interest,

---

1. The parties filed a Joint Stipulation of Uncontested Facts with attached exhibits. The joint stipulation references twenty different promissory notes, labeled A through U. A copy of each of the twenty notes are attached as exhibits to the Joint Stipulations.

In appellants' Third Amended Original Petition, it references sixteen notes. One of those notes was signed by Sprint Sand & Gravel, Inc., a party that non-suited its claims according to ORIX's Brief and is not a party to this appeal. That note is not referenced in the Joint Stipulations.

A number of variances appear in the record. One note is in the petition but not in the stipulations. The Third Amended petition refers to a note signed by Coastal Cement Sand, Inc. on September 3, 1985 for $182,311.20. However, this note is not mentioned in the Joint Stipulation.

A minor discrepancy exits between the stipulation and the exhibits. Note "B" was signed on November 5, 1986 according to the copy of the note, but the Joint Stipulation references it as November 6, 1986.

Another discrepancy exists between the Joint Stipulation, the note, and the Third Amended Original Petition. Note "I" was signed on April 4, 1984, but the Joint Stipulation states April 24, 1984. At the same time, the note indicates the amount as $413,889.52. However, the Third Amended Petition indicates the amount is $354,172.26.

The final discrepancy is between the Third Amended Petition and the Joint Stipulation. The Third Amended Petition indicates that a loan was signed by Southwest Texas Ready Mix on November 1, 1986 for $1,219,901.09. However, the Joint Stipulation (and attached copy of the note) indicates Southwest Texas Ready Mix, Inc. signed a note on September 24, 1986 in the amount of 1,237,762.40.

Both parties seem to agree that the notes that are referenced in the Joint Stipulations are at issue, with the exception of notes labeled as A, H, O, P, and U. Appellants concede that notes A, H, O, P, and U do not contain the objectionable acceleration clause that is the subject of this appeal. ORIX argues those five notes are not contained in the Third Amended Petition, and therefore, appellants cannot seek relief on them. Thus, we will address these issues only in relation to the notes contained in the Joint Stipulations, with the exception of notes A, H, O, P, and U. Also, because note "L" is a modification only to the repayment schedule of note "K," we will not treat it as a separate note. Thus, there are fifteen notes at issue in this appeal.

and appellants sought damages under article 5069 of the Texas Revised Civil Statutes. TEX.REV.CIV. STAT. ANN. art. 5069, § 1.06 (Vernon 1987 & Supp.1996). Appellants argued ORIX contracted for usurious interest because a contingency existed on the face of the notes that might allow ORIX to collect usurious interest if the notes were accelerated. ORIX moved for summary judgment, and appellants filed a partial cross-motion for summary judgment. The partial cross-motion for summary judgment reserved only the issue of attorneys' fees. The trial court granted ORIX's motion for summary judgment.

### Summary Judgment Grounds

■ In the first point of error, appellants argue ORIX failed to expressly present *any* grounds in its motion for summary judgment. The relevant portions of ORIX's motion state:

3. As ORIX will show in its Memorandum of Authorities in Support of its Motion for Summary Judgment ("Memorandum"), Plaintiffs' theory of liability is incorrect as a matter of law. Although ORIX denies that the language of the promissory notes is sufficient under the authorities to render them usurious in the abstract, more importantly Texas law clearly requires that the Court consider the terms of the entire *contract* between the parties, and not one isolated portion, to determine the true intent of the parties to the contract before considering whether this *contract* was usurious at the time it was made.

5. As the parties have agreed that there are no genuine issues of material fact, summary judgment is proper. Because a proper consideration of the summary judgment evidence and the law will reveal that Plaintiffs' claim for usurious contracting against ORIX fails as a matter of law, ORIX is entitled to summary judgment that Plaintiffs take nothing.

ORIX filed a Memorandum of Authorities in Support of its Motion for Summary Judgment, detailing the reasons it believed it was entitled to summary judgment. The Memorandum sought the application of certain contract construction rules, and it argued the loans were not usurious. It also maintained that New York law, rather than Texas law, applied. Finally, it raised a number of defenses, including statute of limitations, novation, bona fide error, full performance, and a defense based on Southwest Texas Ready Mix, Inc.'s bankruptcy.

■ ORIX was required to state each of these grounds in its motion. The Texas Supreme Court has held a summary judgment motion "must expressly present the grounds upon which it is made." *McConnell v. Southside Independent Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993) (plurality opinion). The motion must "stand or fall on the grounds expressly presented." *Id.* Although a trial court may consider a brief or memorandum for guidance in making its determination whether the moving party is entitled to judgment, it may not refer to the brief or memorandum to determine whether the *grounds* are expressly presented. *Id.*

■ We agree with appellants that ORIX failed to present each of these grounds in its motion. The only possible ground inferred from ORIX's motion is that the contracts were not usurious as a matter of law. ORIX certainly could have stated this ground much clearer, but we conclude the motion contained the "ground" that the ORIX notes were not usurious as a matter of law. "Grounds may be stated concisely, without detail and argument. But they must at least be listed in the motion." *McConnell*, 858 S.W.2d at 340 (quoting *Roberts v. Southwest Texas Methodist Hosp.*, 811 S.W.2d 141, 146 (Tex.App.—San Antonio 1991, writ denied)).

■ On the other hand, nothing in the motion itself suggests that New York law applies or that ORIX asserted a number of defenses. Those grounds not explicitly stated within the motion will not be addressed in determining whether the trial court erred in granting the motion for summary judgment. *See Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 805 (Tex.1994) (refusing to address collateral estoppel because it was not a ground in the motion, but addressing the other grounds presented).

ORIX argues its Memorandum was incorporated into its motion for summary judg-

ment.[2] ORIX further contends this incorporation is sufficient to meet the requirements of *McConnell*. ORIX relies upon a decision of the Amarillo Court of Appeals, which declared, "our reading of *McConnell* convinces us that grounds found in a brief that is *incorporated* into a summary judgment motion should be deemed as being presented in the motion." *Howell v. Murray Mortgage Co.*, 890 S.W.2d 78, 85 (Tex.App.—Amarillo 1994, writ denied) (emphasis added).

The result in *Howell* appears to contradict the mandate in *McConnell*. In *McConnell*, the summary judgment motion specifically referenced the supporting brief. *McConnell*, 858 S.W.2d at 344 (Hecht, J., dissenting). In his dissent, Justice Hecht argued "the motion may state the grounds for summary judgment *by reference* to other documents as long as the opposing party is provided with adequate information to oppose the motion, and the summary judgment issues are defined." *Id.* at 345 (emphasis added). In a footnote, however, the plurality rejected this argument and reasoned such an approach would "inject an element of uncertainty into every rule, no matter how clearly stated." *Id.* at 341 n. 4. The plurality then discussed the dangers of creating exceptions to the plain meaning of Rule 166a:

> Carving exceptions to this simple requirement that the motion for summary judgment state the specific grounds frustrates the purpose of Rule 166a(c). Eventually the exceptions would consume the rule, and inject uncertainty into summary judgment proceedings concerning what issues were presented for consideration. Furthermore, it is certainly not unduly burdensome to require the movant to state the specific grounds in the motion for summary judgment.

*Id.* at 341. Because our reading of *McConnell* precludes the holding in *Howell*, we choose not to follow *Howell*.

Finally, ORIX argues appellants cannot contend they were "in any way misled, or

unaware, about the grounds ORIX relied upon for its summary judgment." However, the standard enunciated in *McConnell* does not require any showing that the opposing party was misled concerning the grounds for summary judgment. The standard is simply whether the grounds are explicitly stated in the motion itself. *McConnell*, 858 S.W.2d at 341.

■ A motion does not state the grounds for summary judgment if it simply references an accompanying brief or memorandum of authorities that contains the grounds for summary judgment. *McConnell*, 858 S.W.2d at 341. Likewise, if the motion explicitly states only some of the grounds for summary judgment but references an accompanying brief or memorandum of authorities that contains other grounds for summary judgment, the summary judgment can be upheld only on those grounds explicitly stated in the motion.

Accordingly, only the ground stated in the motion for summary judgment (that the contracts were not usurious as a matter of law) will be considered in determining whether the trial court erred in granting the motion for summary judgment. Thus, appellants' first point of error is overruled in part and sustained in part.

### Improper Summary Judgment Evidence

In their second point of error, appellants argue the trial court relied on defective summary judgment evidence. The summary judgment evidence at issue includes an order from the United States District Court (the "federal order"), a declaration of Jacob M. Mehl (the "Mehl Declaration"), and an affidavit from ORIX's counsel, Douglas R. Little (the "Little affidavit"). The federal order granted summary judgment in favor of ORIX in previous litigation with claims similar to those presented here. Appellants were not involved in that litigation. The Mehl Declaration was filed in the federal case, and

---

**2.** The motion for summary judgment states, "As ORIX will show in its Memorandum of Authorities in Support of its Motion for Summary Judgment ('Memorandum'), Plaintiffs' theory of liability is incorrect as a matter of law." ORIX later *explicitly* incorporated the summary judgment

evidence into the motion by stating, "*Incorporated* into this motion as evidentiary support are [the five documents]." (emphasis added). The paragraph incorporating the summary judgment evidence concluded by stating, "ORIX also submits its Memorandum in support of this motion."

ORIX attached a copy of the Declaration to their summary judgment motion in this case. The Little affidavit explained the nature of the documents and swore they were true and correct copies.

■ Appellants argue the Mehl Declaration is inadmissible because the Little affidavit does not swear that the facts contained in the Mehl document are true and correct. Affidavits must be made on personal knowledge, set forth facts admissible into evidence, and show affirmatively that the affiant is competent to testify to the matters stated. Tex.R. Civ. P. 166a(f). "Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." *Id.* Copies of documents attached to a properly prepared affidavit indicating the copies are "true and correct" are sworn copies. *Republic Nat'l Leasing Corp. v. Schindler,* 717 S.W.2d 606, 607 (Tex.1986). Without the notarization or jurat, the unsworn statement is not an affidavit, and it is not proper summary judgment evidence. *Trimble v. Gulf Paint & Battery, Inc.,* 728 S.W.2d 887, 889 (Tex.App.—Houston [1st Dist.] 1987, no writ). An affidavit is not sufficient unless the statements are direct and unequivocal and perjury can be assigned upon them. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984). The affiant must swear or affirm under oath that the facts stated are true. *Gerstacker v. Blum Consulting Engineers, Inc.,* 884 S.W.2d 845, 848 (Tex.App.—Dallas 1994, writ denied).

■ The Mehl Declaration does not contain a notarization or jurat. Thus, standing alone it does not amount to an affidavit. The Little affidavit swears the unsworn Mehl Declaration is a true and correct copy. However, it does not swear *the facts* contained within the Mehl Declaration are true and correct. Nor does it indicate that Little has personal knowledge of the facts contained in the unsworn statement. Therefore, we regard the Mehl Declaration as a true and

correct copy of the statement, but we cannot consider the facts contained within the Declaration as proper summary judgment evidence.

ORIX contends the Mehl Declaration is admissible under Rule 1005 of the Rules of Evidence. Tex.R. Civ. Evid. 1005[3]. Even if the declaration met the requirements of Rule 1005, the affidavit also must be based on personal knowledge. Tex.R. Civ. P. 166a(f). The requirement that the facts alleged constitute admissible evidence is only one of the requirements of a proper affidavit under Rule 166a(f). Because the Little Affidavit does not suggest that the unsworn statements contained in the Mehl Declaration are based on Little's personal knowledge, it does not meet the requirements of Rule 166a(f).

Appellants also argue the federal court order was improper summary judgment evidence. ORIX asserts the federal order was not offered as summary judgment evidence, but was provided to the trial court only as persuasive authority. Therefore, we will not consider the federal order as part of the summary judgment proof.

■ Appellants reason that because the trial court did not specify the grounds it granted summary judgment upon, "it must be implied the Court considered the objectionable evidence in making its decision." We disagree. It is just as likely the court did *not* rely upon that evidence. Thus, we address the merits of the motion for summary judgment without reference to these three documents. Appellants' second point of error is overruled.

## Usury

### 1. Background and Standards.

In its third point of error, appellants argue the trial court erred in granting summary judgment in favor of ORIX "on the grounds presented in its separate memorandum of authorities." As discussed above, the

---

**3.** Texas Rule of Civil Evidence 1005 states:

The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form, if otherwise admissible, may be proved by copy, certified as correct in accordance with Rule 902 or testified to be correct by a witness who has compared it with the original. If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given.

grounds found only in the Memorandum of Authorities will not be addressed. The trial court may have properly granted summary judgment based solely on the grounds explicitly stated in the motion itself. Thus, only those grounds will be addressed in determining whether the trial court erred in granted summary judgment.

The standard of review for a motion for summary judgment is well-settled. The movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; in deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and every reasonable inference must be resolved in the nonmovant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

Each of the fifteen notes were pre-printed forms with certain empty blanks. The first blank is entitled "(Total of Note)." Each note also has blanks for the city, state, date, and the mortgagee, which in each case here was ORIX. For each of these notes, the total sum was then restated and broken down into fixed, equal principal installments with one final balloon payment. The precomputed interest was included in the stated face amount of each note so that an equal monthly payment amortization schedule, with a final balloon payment, could be prepared. ORIX prepared the contracts in this manner for the convenience of the borrower so that the borrower would know in advance the amount of the monthly payment to retire the total indebtedness over the total term of the Loan Contract. Each note contained the following clause:

> ... with interest from the date hereof payable on the unpaid amount at the maturity of each installment, until maturity at the rate of –0–% per annum and after maturity at the highest legal contract rate, and if placed in the hands of an attorney for collection, a reasonable sum as attorneys' fees. *Upon non-payment of any installment or interest when due, all remaining installments shall, at the option of the holder and without notice or demand, become immediately due and payable together with interest, collection charges and attorneys' fees.*

(emphasis added). The record does not explicitly state why zero was inserted into the blank for the annual interest rate, but we infer ORIX placed the zero in the "per annum" space because the total amount of indebtedness already included the total amount of interest due over the period of the loan.

Texas statutory law provides monetary penalties against any person who "contracts for, charges or receives interest which is greater" than the maximum, legal interest rate. TEX.REV.CIV. STAT. ANN. art. 5069, § 1.06(1). Because the usury statutes are penal in nature, they must be strictly construed. *Steves Sash & Door Co. v. Ceco Corp.*, 751 S.W.2d 473, 476 (Tex.1988). Courts will presume the parties intended to enter into a non-usurious contract. *Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 341 (Tex.1980). When a party is claiming damages against one who "contracts for" usurious interest, they must show the contract, as construed, is usurious on its face. "The contract under construction will not be found usurious on its face unless it *expressly* entitled the lender, *upon the happening of a contingency* or otherwise, to exact interest at a rate greater than that allowed by law." *Id.* (emphasis added).

To determine whether the lender is expressly entitled to collect usurious interest on the face of the contract, the terms used in the acceleration clause are of utmost importance. *Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 328 (Tex.1984). For example, a provision that calls for the maturation of a "debt" is not usurious because interest does not become part of the "debt" until earned. *Id.* However, the acceleration of a "note" includes the face amount and unearned interest, raising the possibility the note is usurious on its face. *Id.*

Both parties cite *Jim Walter Homes, Inc. v. Schuenemann* to determine whether the term "installments" includes only the principal, or the principal plus unearned interest. However, the parties strongly disagree as to the applicability and effect of *Schuenemann* to this case.

## 2. *Does* Schuenemann *apply?*

The Schuenemanns had the option to purchase a house from Jim Walters Home, Inc. for a "cash price" of $17,735. *Id.* at 327. Instead, they elected the "time price" of $37,008, which included a time price differential, or finance charge, of $19,273 over the cash price. *Id.* The Schuenemanns sued Jim Walters Homes, Inc., alleging the contract was a usurious time price differential contract in violation of the Texas Consumer Credit Code. *Id.* at 326. The trial court granted the Schuenemanns' motion for summary judgment. *Id.* On appeal, the Texas Supreme Court considered three different documents to determine the entire agreement between the parties. *Id.* at 327.

The building contract stated both the cash price and the time price of the house, it listed the 11.4% annual interest rate, and it contained an acceleration clause declaring "the remainder of said debt" immediately due upon default. *Id.* The installment note bore a face amount of $37,008. *Id.* Only by reference to the building contract could one determine that $19,273 of that amount was a finance charge. *Id.* The installment note provided for acceleration of "all the remainder of said installments due and said note will mature and it shall become due and payable." *Id.* The final contract, the lien contract, allowed the acceleration of "the entire remaining unpaid balance of said note." *Id.* at 328.

The Court concluded the acceleration clauses in the installment note and the lien contract created the potential for the collection of usury. *Id.* at 329. In reaching this conclusion, the Court refused to give effect to nonusurious language contained in the building contract because it was "merely an inaccurate description of the acceleration terms actually agreed upon by the parties." *Id.* 330–31. For the same reason, the Court also refused to apply the rule that if a contract is

capable of two interpretations, one usurious and the other non-usurious, the non-usurious interpretation applies. *Id.* at 331–32.

▮▮▮▮ ORIX contends that *Schuenemann* was decided under Subtitle 2 of the Consumer Credit Code and does not apply to this situation because the Texas Supreme Court has dispensed with the presumption of legality in Subtitle 2 cases.[4] *See Gonzalez v. Gainan's Chevrolet City, Inc.,* 690 S.W.2d 885, 887 (Tex.1985). With the presumption of legality removed, it would be easier to find a contract usurious under Subtitle 2 than under Subtitle 1. While the Court may have removed this presumption *after* the decision in *Schuenemann,* it is clear that *Schuenemann* was not decided on those grounds. The Court specifically stated that it would continue to adhere to the presumption of legality in Credit Code time differential cases. *Schuenemann,* 668 S.W.2d at 332. Thus, *Schuenemann* cannot be distinguished on this basis.

ORIX next contends the decision in *Schuenemann* turned on the phrase "said note" rather than "said installments." Because the clause in this case uses the term "installment" without the term "said note," ORIX contends *Schuenemann* does not apply. The *Schuenemann* Court indicated the "said note" language in the installment contract was analogous to the language used in an earlier decision, which held the contracts were usurious. *Id.* at 329; *see also Clements v. Williams,* 136 Tex. 97, 147 S.W.2d 769 (1941). ORIX points to the lack of the term "said note" as a critical distinction between its notes and the notes in *Schuenemann.*

However, we do not read the holding as limited as ORIX does. First, the *Schuenemann* installment note used the term "installment" as well as "said note." *Schuenemann,* 668 S.W.2d at 327 ("... declare all the remainder of said installments due and

---

4. Title 79 of the Texas Civil Statutes contains three subtitles. Subtitle 1, entitled "Interest," deals generally with the maximum, legal rate of interest and provides penalties for charging or receiving an usurious rate of interest. Tex Rev. Civ. Stat. Ann. art. 5069 §§ 1.01 –1.14 (Vernon 1987 & Supp.1996). Subtitle 2, entitled "Consumer Credit," generally deals with special loans, including mortgage, retail installments, and motor vehicle installment loans, and it also provides penalties for violations of these provisions. Tex Rev.Civ. Stat. Ann. art. 5069 §§ 2.10–8.06 (Vernon 1987 & Supp.1996). Appellants brought this action under article 5069, section 1.06, which falls under Subtitle 1.

said note will mature ...."). Second, the determining factor for the Court was that the defendant could have collected usurious interest on the face of the note. The Court announced, "[w]e therefore hold that the default maturity clause in the installment note and lien contract unambiguously call for the collection of unearned time price differential." *Id.* Furthermore, in the footnote following this holding, the Court discussed both "installment" and "note." *Id.* at 329 n. 3. Rather than distinguishing "said note" from "said installments," the *Schuenemann* contract treated the installments as part of the note.

We also agree with appellants that the language in the notes drafted by ORIX and the installment note in *Schuenemann* are nearly identical. The *Schuenemann* installment note states, "[I]n the event of default in payment of any installment for a period of thirty days, the holder of this note may, at its option, declare all the remainder of said installments due and said note will mature and it shall at once become due and payable." *Id.* at 327. In comparison, the ORIX notes state, "Upon non-payment of any installment or interest when due, all remaining installments shall, at the option of the holder and without notice or demand, become immediately due and payable together with interest." With the exception of "said note" included in the *Schuenemann* installment contract, there is no major difference between the clauses.

Finally, an even more striking similarity between *Schuenemann* and this case is that on the face of both the ORIX notes and the *Schuenemann* note, the interest was already calculated into the total amount due. *Id.* One cannot separate the original principal in the total from the unearned interest simply by examining the notes. For all these reasons, we conclude *Schuenemann* is sufficiently analogous to the situation here, and we rely upon it as indicated.

### 3. Are the notes usurious on their face?

Turning to the merits of the notes at issue here, ORIX argues the notes do not expressly allow any contingency on their face that would allow it to collect usury. The contract requires the borrower to repay the total amount of the note with interest at zero percent per annum "and after maturity at the highest legal contract rate." ORIX argues that if it were to mature the debt by acceleration it could not do so beyond the "highest legal contract rate." ORIX asserts this exhibits a clear intention by ORIX that "[e]xcess pre-computed interest included in the installments was simply to be rebated."

However, the meaning of that phrase is unclear. On the one hand, the highest legal *contract* rate could indicate the contract rate of zero percent per annum. If that interpretation is correct, the acceleration of "all remaining installments ... [which] shall become immediately due and payable together with interest" would only mean the installments (with the previously added interest) would become immediately due. Therefore, usury could be collected by ORIX. The other interpretation, and the interpretation that ORIX apparently advances, is that after acceleration, the installments plus the highest *legal* contract rate of interest is immediately due. However, because the installments already include interest, the addition of the highest legal rate of interest would again create the possibility of charging usury. Contrary to ORIX's contention, the clause does not indicate any excess will be rebated. Where the term "installment" refers to a total that includes principal and unearned interest, an acceleration of all "installments" raises the possibility the note is usurious on its face. Thus, just as in *Schuenemann,* a contingency exists on the face of the note itself that would allow for the collection of usurious interest.

Finally, ORIX contends that the obvious meaning of the contract is that "installments" means "principal." However, this argument conflicts with the language of the contract. The contract never uses the term principal and expressly charges a zero percent per annum interest rate. ORIX cites no authority indicating that "installments" refers only to principal. Indeed, ORIX concedes in its summary judgment memorandum that "the installments as listed on the face of each of the notes do include a component of unearned interest." Therefore, standing alone,

the notes contain language that would allow for the collection of unearned interest in the event of acceleration.

4. *Do the accompanying security agreements or prior dealings of the parties remove the contingency?*

ORIX insists the notes must be read together with the accompanying security agreements. ORIX contends that each security agreement contains a valid acceleration clause and a savings clause. The first paragraph of each security agreement states it is given to secure the payment, "with interest thereon," of the "Mortgage Obligations." The second paragraph defines Mortgage Obligations as "any and all loans, advances, payments" etc. Paragraph three reads:

> Mortgagor [appellants] covenants and agrees with and warrants ... that Mortgagor will fully and faithfully pay, perform and fulfill all of the Mortgage Obligations, with late charges thereon from and after maturity, whether by acceleration or otherwise, at the rate of 1 /15 of 1% per day except where such rate is in excess of the maximum permitted by applicable law, in which event the rate shall be such maximum lawful rate.

Paragraph five contains the following language:

> If Mortgagor shall default in the prompt payment, performance or fulfillment of any of the Mortgage Obligations, ... all Mortgage Obligations shall at once, at the option of the Mortgagee, become immediately due and payable ...

In paragraph ten, it provides:

> [i]f any one or more provisions hereof are in conflict with any statue or law and therefore not valid or enforceable, then each such provision shall be deemed null and void but to the extent of such conflict only and without invalidating or affecting the remaining provisions hereof.

ORIX first contends that the language in paragraph five is a valid acceleration clause and that it should be construed together with the acceleration clause in the promissory notes. It argues, in essence, that no Texas decision exists interpreting "Mortgage Obli-

gations" as usurious, and therefore, given the presumption of legality, the clause is valid. However, this acceleration clause is ambiguous as to whether it will accelerate only the debt plus earned interest or if it allows ORIX to accelerate unearned interest as well. Again, the problem can be traced back to the inclusion of all unearned interest into the stated total amount due. Reference to "Mortgage Obligations" does not clarify this problem in the original promissory notes.

Furthermore, *Schuenemann* dictates that an acceleration clause in the security agreement such as this should not be used to determine the terms of the acceleration clause in the promissory note. *Schuenemann* discussed this issue at length:

> Although at the outset we construed all three instruments together to determine the *entire agreement* between the parties, we conclude that for the limited purpose of determining the terms of acceleration for which the parties contracted, the clear terms of the acceleration provisions in the installment note and lien contract should be interpreted without reference to the description thereof contained in the building contract. Courts have shown a reluctance to hold that acceleration of maturity provision which clearly call for the collection of unearned interest are vitiated by mere intimations of contrary intent found elsewhere in the contract. Invoking the rule that the documents are to be construed together does not in any way imply that we must give weight to a purported description of acceleration terms *to be* agreed upon, when the terms of acceleration *actually* agreed upon are set forth in unambiguous language.

*Schuenemann,* 668 S.W.2d at 330–31 (citations omitted). In this case, the terms of acceleration were set out in the original promissory notes. Thus, as in *Schuenemann,* we will not read the acceleration terms of these promissory notes and the security agreements together.

Second, ORIX contends that the language in paragraph ten amounts to a valid savings clause. A savings clause may cure "an open-ended contingency provision the operation of which *may* or *may not* result in a

charge of usurious interest." *First State Bank v. Dorst,* 843 S.W.2d 790, 793 (Tex. App.—Austin 1992, writ denied). A savings clause is ineffective if it directly contradicts the explicit terms of the contract. *Id.*

■ Appellants respond by arguing the clause is only a severability clause and does not *expressly* disclaim an intention to collect usurious interest. We agree. Furthermore, because by its own terms the clause only applies to the "provisions hereof," it applies only to the security agreements, not the promissory notes. Therefore, the acceleration clause contained in the promissory notes is not a "provision hereof."

■ Finally, ORIX contends that prior dealings of the parties proves the parties had no intent to collect usurious interest. Because ORIX never collected usurious interest from the parties on these notes or previous notes, ORIX claims there was no intent to do so. Because our inquiry is whether the contract allows a contingency that might allow for the collection of usury, the intent of the parties is not relevant to determine whether a contract is usurious on its face. Furthermore, determining the intent of the parties from prior dealings is a fact issue that, in isolation, would justify reversing the summary judgment.

*5. Conclusion.*

When ORIX included the total amount of interest into the total amount of the loan, it was obligated to expressly disclaim any intent to collect usurious interest. *See Smart,* 597 S.W.2d at 341. ORIX did not meet this burden. Given the holding in *Schuenemann,* we must conclude that the ORIX notes expressly allow ORIX to collect a rate of interest greater than allowed by law on their face. Regrettably, ORIX failed to heed the admonition of the *Schuenemann* court:

> In literally scores of cases, the courts of this state have been called upon to decide whether a contract is usurious because it contains an acceleration provision which allows the collection of unearned interest or finance charges. In view of this, we fail to understand why acceleration clauses are drafted which do not include a sentence

expressly disavowing any intention to collect excessive unearned interest or finance charges in the event the obligation is accelerated. To leave the matter open to doubt is to invite litigation and risk the harsh penalties of article 5069. To settle the matter clearly in the contract between the parties is a service to the creditor, the debtor, and the taxpayers of this state.

*Schuenemann,* 668 S.W.2d at 333 n. 6 (citation omitted). We sustain appellants' third point of error.

■ In the fourth point of error, appellants complain the trial court erred in denying their partial cross-motion for summary judgment. Our record does not contain an order by the trial court denying appellants' cross-motion. Because appellants did not obtain a ruling on the partial cross-motion for summary judgment, this point was not preserved for appeal. TEX.R.APP. P. 52(a). Thus, we will not reverse and render judgment as appellants request. The normal procedure when an appellate court reverses an order granting summary judgment is to remand the case for a new trial. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988); *Montgomery v. Blue Cross and Blue Shield of Texas, Inc.,* 923 S.W.2d 147, 151 (Tex. App.—Austin 1996, writ filed). An exception exists when both parties move for summary judgment "and the trial court grants one of the motions *and denies the other.*" *Montgomery,* 923 S.W.2d at 151 (emphasis added); *see also Jones,* 745 S.W.2d at 900. Because we do not have an order evidencing the trial court's denial of the cross-motion, the exception does not apply, and we do not render judgment in favor of appellants. We overrule appellants' fourth point of error.

The judgment of the trial court is reversed and remanded for further proceedings.

FOWLER, Justice, concurring.

I concur in the opinion of the court but I write separately to make two specific points. First, I agree that *Howell v. Murray Mortgage Co.* misstated the holding in *McConnell v. Southside Independent Sch. District* when it concluded that *McConnell* would allow grounds not contained in a motion for summary judgment, but only incorporated by

reference, to be considered in support of the motion. *Howell v. Murray Mortgage Co.,* 890 S.W.2d 78, 85 (Tex.App.—Amarillo 1994, writ denied); *McConnell v. Southside Independent Sch. District,* 858 S.W.2d 337 (Tex. 1993). *McConnell* was crystal clear that this could *not* happen. *McConnell,* 858 S.W.2d at 341. However, I do *not* agree that the *result* in *Howell* is contrary to *McConnell.* The issue in *McConnell* was whether a court could consider grounds in support of a motion for summary judgment when those grounds were contained in a separate document or contained in evidence attached to the summary judgment motion. *McConnell,* 858 S.W.2d at 338. The Supreme Court clearly held that a "motion must stand or fall on the grounds expressly presented in the motion" and they cannot be incorporated by reference. *Id.* at 341. The issue in *Howell* was whether the court could consider grounds contained in the same document as the motion but placed under a different-numbered paragraph than the paragraph containing the motion. *Howell,* 890 S.W.2d at 85. Clearly *Howell & McConnell* did not involve the same situations and *McConnell* did not address the *Howell* situation.

In short, in my opinion, the *Howell* court reached the right *result,* but gave wrong reasons for reaching the holding.[1] Regardless of the accuracy of *Howell*'s language, the opinion has no significance to the appeal before this Court because this appeal involves a *McConnell* situation—grounds and defenses not contained in the motion and discussed only in a separate document from the motion.

The second reason I write separately is to emphasize what our holding does and does not do. It does *not* hold that the defenses raised in the brief accompanying the motion for summary judgment are invalid. As noted in the opinion, we specifically did not, and could not, consider these defenses because they were *not* properly before the court.

The opinion *does* hold that the notes were usurious on their faces and therefore ORIX could not prevail on its claim that they were *not* usurious on their face.

---

1. Part of the problem with *Howell* is that its use of the word "incorporated" is confusing. The opinion says that the grounds in support of the motion in *Howell* could be considered because the motion "incorporated the brief which contained the grounds in support of the summary judgment," meaning that the brief and its grounds were *contained in* the motion, *not* incorporated *by reference.* The opinion uses the word "incorporated" not only when it means "contained within" but also when it means *incorporated by reference,* and this is why the opinion is misleading and sometimes incorrect.