Opinion issued May 3, 2007
















In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00472-CR

__________


ANGEL TAVERA BALDERAS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from County Criminal Court at Law No. 3

Harris County, Texas

Trial Court Cause No. 1350293






MEMORANDUM OPINION

 We deny appellant's motion for rehearing. Tex. R. App. P. 49.3. We withdraw
our January 11, 2007 opinion, substitute this opinion in its place, and vacate our
January 11, 2007 judgment.

 Appellant, Angel Tavera Balderas, challenges the trial court's order denying
his application for a writ of habeas corpus. (1) In three issues, appellant contends that
"the trial court erred in failing to conduct an evidentiary hearing" and that the trial
court erred in denying his application on the grounds that he was denied his right to
an interpreter and his right to appeal.

 We affirm the order of the trial court. 

Factual and Procedural Background


 On March 3, 1995, appellant pleaded guilty to the misdemeanor offense of
theft, and the trial court assessed his punishment at confinement for ten days in the
Harris County Jail. (2) On December 1, 2005, appellant filed an application for a writ
of habeas corpus, asserting that he was denied his right to effective assistance of
counsel, his waiver of a jury trial was involuntary, his plea of guilty was involuntary,
"especially in light of the trial court's failure to admonish [him] as to the direct and
collateral consequences that [he] could be subjected to deportation and exclusion
from the United States," and he was not advised of his rights to a court reporter, an
interpreter, and an appeal. Appellant requested an "evidentiary hearing" and attached
a verification.

 The State filed a response, asserting that appellant "did not make a reasonable
showing that his attorney's conduct fell below an acceptable standard causing him
harm," appellant "signed a written waiver of his right to testify and present witnesses
and evidence," "it is presumed that the presiding judge advised [appellant] through
his plea he was giving up said rights," appellant "signed his plea admonishments,"
"it is presumed [appellant] was informed of his rights and that he voluntarily gave
them up when he entered his plea," and there was "absolutely no record that
[appellant] was ever forced to plea, or that he was not properly admonished." The
State further asserted that appellant's application could be resolved "without the need
for an evidentiary hearing." 

 Appellant filed an affidavit and testified that he hired attorney Juan Contreras
to represent him in the theft case. He further testified:

 [Contreras] told me that I would have to do 10 days in Jail and
that my case would be finished and closed and that I would have to plead
guilty. He asked me to sign some documents that were in English and
he was my interpreter.


 At the time I plead guilty, . . . I was totally illiterate in the English
language. . . . I was totally dependent on my attorney to know the law and
explain it to me and any interpreter to explain to me any written
documents in English or any words that were spoken to me in the English
language.


 I signed some documents for attorney Contreras that were in
English. There was no interpreter that explained those documents to me. 
I did not have an interpreter, nor did I know that I was entitled to have an
interpreter. Mr. Contreras told me what the documents said since they
were in the English language and he also interpreted for me in front of
the judge. . . . He never asked me what my immigration status was or
whether I was a resident alien. He did not explain that by pleading guilty
and taking time in jail it was going to be a final conviction on my record
that could never be erased or its consequences. He did not explain to me
about probation or . . . deferred adjudication probation or explain the
differences between the two and which would have less of a consequence
for . . . immigration purposes. 


. . . .


 At the time I did not know that it could be used as a basis to deport
[me] from this country and lose all my right[s] to naturalization, lose my
Permanent Resident Alien Status and to exclude me from this country.


 At the present, the United States Immigration and Naturalization
Service is taking away my rights as a Resident Alien, denying my right
to naturalization and I am fighting deportation based on the fact that I
have never been convicted of theft.


. . . . 


 When I was in front of the judge, I do not remember my attorney
telling me that the judge was warning me of the fact that if I plead guilty
to this offense that I could be deported, excluded or denied naturalization
under federal law.


 Appellant also testified that Contreras did not explain his right to a jury trial,
to a court reporter, or to file a motion for new trial or appeal. Appellant stated that
he would not have pleaded guilty had he been aware of these rights and the
consequences of pleading guilty. Finally, appellant testified that he "did not plead
guilty knowingly and voluntarily." (3)

 The trial court denied appellant's application. 

Confinement We first address the State's argument that, because appellant has served the
sentence assessed by the court in the theft case, he is not confined as required for
relief under Chapter 11 of the Texas Code of Criminal Procedure. See Tex. Code
Crim. Proc. Ann. art. 11.01-.65 (Vernon 2005 & Supp. 2006).

 A writ of habeas corpus is the remedy to be used when any person is restrained
in his liberty. Ex parte Davis, 748 S.W.2d 555, 557 (Tex. App.--Houston [1st Dist.]
1988, pet. ref'd) (citing Tex. Code Crim. Proc. Ann. art. 11.04 (Vernon 2005)). To
be entitled to habeas corpus relief, an applicant must establish that he was either
"confined" or "restrained" unlawfully at the time the application was filed. See
Dahesh v. State, 51 S.W.3d 300, 302 (Tex. App.--Houston [14th Dist.] 2000, pet.
ref'd) (citing Rodriguez v. Court of Appeals, Eighth Supreme Judicial Dist., 769
S.W.2d 554, 558 (Tex. Crim. App. 1989)). The term "confinement" refers "not only
to the actual, corporeal and forcible detention of a person, but likewise to any
coercive measures by threats, menaces or the fear of injury, whereby one person
exercises a control over the person of another, and detains him within certain limits." 
Tex. Code Crim. Proc. Ann. art. 11.21 (Vernon 2005). The term "restraint" refers
to "the kind of control which one person exercises over another, not to confine him
within certain limits, but to subject him to the general authority and power of the
person claiming such right." Id. art. 11.22 (Vernon 2005). The terms "confinement"
and "restraint" encompass incarceration, release on bail or bond, release on probation
or parole, or any other restraint on personal liberty. See Rodriguez, 769 S.W.2d at
558; Davis, 748 S.W.2d at 557. 

 Based on the above statutes, this Court has concluded that "a void
misdemeanor conviction constitutes 'confinement' or 'restraint' . . . and also
constitutes the necessary collateral legal consequences that would invoke the writ
powers of this Court." Davis, 748 S.W.2d at 557; see also Ex parte Stamnitz, 768
S.W.2d 461, 462 (Tex. App.--Houston [1st Dist.] 1989, no pet.). In Davis, this Court
held that an applicant who had already served a misdemeanor sentence and paid a fine
imposed by the trial court was nonetheless "confined" because he was denied entry
into the military as a result of his misdemeanor conviction. 748 S.W.2d at 557. 
Accordingly, to the extent that appellant has become the subject of deportation
proceedings based upon what he contends is a void misdemeanor conviction, we hold
that appellant is not precluded from seeking habeas corpus relief. We now turn to
the merits of appellant's appeal.

Standard of Review 

 An applicant for a writ of habeas corpus bears the burden of proving his
allegations by a preponderance of the evidence. Ex Parte Thomas, 906 S.W.2d 22,
24 (Tex. Crim. App. 1995). In reviewing the trial court's ruling, we view the facts
in the light most favorable to the trial court's ruling and we afford almost total
deference to the court's determination of historical facts that are supported by the
record, especially when the fact findings are based on an evaluation of credibility. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We afford the same
amount of deference to the trial court's rulings on "application of law to fact
questions" that involve an evaluation of credibility. Id. If resolution of those
ultimate questions turns on an application of legal standards, we review those
determinations de novo. Id.

Hearing

 In his first issue, appellant contends that "the trial court erred in failing to
conduct an evidentiary hearing where there were sworn, verified, and controverted
material issues of fact both in the pleadings and the affidavits submitted by appellant,
the State, and former trial counsel." The State contends that the trial court held a
hearing "by affidavits only" and denied appellant's application because the trial court
"did not believe appellant's affidavit." (4) The State further contends that appellant did
not object to the trial court's decision not to hear live testimony and that the Code of
Criminal Procedure does not require a live evidentiary hearing on the application.

 The State's contentions are supported by the record. In its original order
directing the State to respond to the application, the trial court set a hearing on the
merits of appellant's application on March 2, 2006. Then, on March 2, 2006, the trial
court signed a "case reset form," stating that the "undersigned Defendant and Counsel
acknowledge that this case is reset" for a hearing on March 29, 2006. Appellant's
attorney signed the reset form and, in the space for appellant's signature, there is a
notation stating "by submission affidavits." On March 30, 2006, the trial court signed
another "case reset form," resetting the case for a writ hearing on April 11, 2006. 
Again, appellant's attorney signed the form, which noted that the parties had filed
affidavits in regard to appellant's application. On April 11, 2006, the trial court
signed its order, reciting that it had "heard [appellant's] application for writ of habeas
corpus," the parties appeared for a hearing on the application, it had reviewed the
pleadings, and it had heard the evidence and argument of the parties. Thus, the record
reflects that the trial court conducted a hearing on appellant's application by
considering the pleadings on file and the evidence submitted by the parties, including
the affidavits, albeit without the aid of live testimony. (5) 

 Article 11.09 of the Texas Code of Criminal Procedure, which specifically
applies to persons seeking habeas relief who are confined on misdemeanor charges, (6) 
does not require a trial court to conduct a live evidentiary hearing and afford a party
the opportunity to present live testimony on an application filed under the article. See
Tex. Code Crim. Proc. Ann. art. 11.09 (Vernon 2005) ("If a person is confined on
a charge of misdemeanor, he may apply to the county judge of the county in which
the misdemeanor is charged to have been committed . . . .)." (7) 

 We overrule appellant's first issue.

Interpreter

 In his second issue, appellant contends that the trial court erred in denying his
application on the ground that he was denied his right to an interpreter. "When a
motion for appointment of an interpreter is filed by any party or on motion of the
court, in any criminal proceeding, it is determined that a person charged or a witness
does not understand and speak the English language, an interpreter must be sworn to
interpret for the person charged or the witness." Tex. Code Crim. Proc. Ann. art.
38.30(a) (Vernon Supp. 2006). 

 The Texas Court of Criminal Appeals has acknowledged that providing an
interpreter to an accused who does not understand English is required by the
Confrontation Clause (8) and by Article I, section 10 of the Texas Constitution. (9) 
Baltierra v. State, 586 S.W.2d 553, 556-59 (Tex. Crim. App. 1979). The court has
more recently concluded that "when a trial judge is aware that [a] defendant has a
problem understanding the English language," his right to have an interpreter is a
right "which must be implemented by the system unless expressly waived." Garcia
v. State, 149 S.W.3d 135, 144-45 (Tex. Crim. App. 2004). The court explained that
"[t]he judge may become aware of the defendant's language problem either by being
informed of it by one or both parties or by noticing the problem sua sponte." Id. The
court held that because the record demonstrated that the trial court was aware of the
defendant's language problem, the trial court was required to ensure that the trial
proceedings were translated. Id.; see also Ex parte Nanes, 558 S.W.2d 893, 894 (Tex.
Crim. App. 1977) (granting post-conviction habeas relief to defendant who alleged
he was denied his constitutional rights "because he was not afforded an interpreter"
based on stipulation by State that defendant did not understand English and affidavit
from interpreter who testified that he was not present during many phases of trial);
Miller v. State, 177 S.W.3d 1, 7 (Tex. App.--Houston [1st Dist.] 2004, no pet.)
(holding that once trial court became aware of complainant's language problem, court
had independent duty to secure interpreter).

 This case is distinguishable both procedurally and substantively. First, here, 
there is no reporter's record of the plea hearing, and nothing in the record suggests
that appellant complained of a failure of the trial court to appoint an interpreter during
the plea hearing. Furthermore, there is no evidence that the trial court was aware that
appellant had difficulty understanding English. In fact, appellant, in making his
ineffective assistance of counsel argument in his application, asserts that his counsel
"fail[ed] to bring to the trial court's attention" his inability to speak English and his
need for an interpreter. Because there is no evidence that the trial court was aware
of appellant's inability to speak English, the trial court was not required to appoint
an interpreter. See Garcia, 149 S.W.3d at 145; see also Leon v. State, 25 S.W.3d 841,
843 (Tex. App.--Houston [1st Dist.] 2000, pet. ref'd) ("Unless the record otherwise
demonstrates the defendant's lack of understanding of the proceedings, a defendant
who does not request an interpreter waives the right to complain on appeal.").

 Second, in this case, appellant pleaded guilty to the offense, and the trial
court's judgment recites that appellant "knowingly, intelligently, voluntarily, and
expressly waived trial by jury, and in open court pleaded as indicated above." 
"Absent any showing to the contrary, we assume regularity in the proceedings." 
Leon, 25 S.W.3d at 843 (citing Breazeale v. State, 683 S.W.2d 446, 450-51 (Tex.
Crim. App. 1984)). Moreover, the evidence cited above supports the trial court's
rejection of appellant's affidavit testimony regarding the voluntariness of his plea. 
Thus, the trial court was presented with evidence on which it could have found that
appellant had been informed of his legal rights, including his right to confront
witnesses in a jury trial, and that he voluntarily and intelligently waived those rights. 
See Briones v. State, 595 S.W.2d 546, 547-48 (Tex. Crim. App. 1980); Leon, 25
S.W.3d at 843-44. Accordingly, we hold that the trial court did not err in denying
appellant's application for a writ of habeas corpus on the ground that he was denied
his right to an interpreter.

 Appellant also contends, in a single sentence in his second issue, that his trial
counsel's failure to alert the trial court to his need for an interpreter fell below an
objective standard of reasonableness. To prevail on his claim of ineffective
assistance, appellant must show that (1) his counsel's representation fell below an
objective standard of reasonableness and (2) a reasonable probability exists that but
for his counsel's unprofessional errors, the result of the proceeding would have been
different. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984);
Vasquez v. State, 830 S.W.2d 948, 949 (Tex. Crim. App. 1992). A "reasonable
probability" is one sufficient to undermine confidence in the outcome of the
proceeding. Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). It is
appellant's burden to prove ineffective assistance, and in reviewing counsel's
performance, we must indulge a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance. Garcia v. State, 57
S.W.3d 436, 440 (Tex. Crim. App. 2001). Allegations of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness. Thompson, 9 S.W.3d at 813.

 Here, the trial court was presented with conflicting evidence regarding
appellant's need for an interpreter, in addition to his counsel, who had been appointed
to assist him in the plea hearing. Appellant himself testified that Contreras served as
his interpreter during the plea hearing. Thus, the trial court acted within its discretion
in rejecting appellant's testimony and concluding that there was no need to appoint
an interpreter and that appellant voluntarily waived a jury trial and entered his guilty
plea. Accordingly, we hold that appellant has failed to demonstrate that counsel's
performance fell below an objective standard of reasonableness.

 We overrule appellant's second issue.

Right to Appeal

 In his third issue, appellant contends that the trial court erred in denying his
application on the ground that he was denied his right to appeal. Appellant makes no
separate argument concerning this issue, and waives this issue for our review. See
Tex. R. App. P. 38.1(h). (10)

 We overrule appellant's third issue.

Conclusion


 We affirm the order of the trial court.



 Terry Jennings

 Justice


Panel consists of Justices Nuchia, Jennings, and Higley.


Do not publish. Tex. R. App. P. 47.2(b).
1. See Tex. Code Crim. Proc. Ann. art. 11.09 (Vernon 2005).
2. The State of Texas v. Angel Tavera Balderas, no. 9445798, in County Criminal Court
at Law Number Three, Harris County, Texas.
3. We note that Contreras filed a document entitled "Affidavit of Counsel in Response
to Writ." However, the document is not notarized, does not contain a jurat, and is
substantively defective, rendering it incompetent. See,e.g., Coastal Cement Sand, Inc.
v. First Interstate Credit Alliance, Inc., 956 S.W.2d 562, 567 (Tex. App.--Houston
[14th Dist.] 1997, writ denied)); see also Alaniz v. Rebello Food & Beverage, L.L.C.,
165 S.W.3d 7, 15 n.12 (Tex. App.--Houston [14th Dist.] 2005, pet. filed). 
Accordingly, we will not consider Contreras's affidavit for any purpose. 
4. The record contains a copy of the trial court's "final docket" with the notation "relief
sought under writ denied. Veracity of def[andant's] affidavit suspect." 
5. We recognize that the Court of Criminal Appeals has held, in the context of an
application for a writ of habeas corpus that seeks relief from a felony judgment, that
if the applicant has alleged facts that, if true, might entitle him to relief, a court should
remand the matter to the trial court for resolution of the factual issues presented in
accordance with article 11.07 of the Code of Criminal Procedure. See Ex parte
Patterson, 993 S.W.2d 114, 115 (Tex. Crim. App. 1999) (citing Tex. Code Crim.
Proc. Ann. art. 11.07(3)(d) (Vernon 2005)). Here, the trial court conducted a
hearing, and nothing in the record suggests that appellant objected to the trial court's
decision not to receive live testimony at the hearing. Rather, the record indicates that
appellant consented to the hearing by affidavits. Additionally, appellant in this case
filed his application for a writ of habeas corpus under article 11.09, not article 11.07. 
Article 11.07 sets forth specific procedures for the application seeking relief from a
felony judgment. 
6. Article 11.10 provides, "When motion has been made to a judge under the
circumstances set forth in the two preceding Articles, he shall appoint a time when he
will examine the cause of the applicant, . . . . He shall also specify some place in the
county where he will hear the motion." Tex. Code Crim. Proc. Ann. art. 11.10
(Vernon 2005). 
7. We note that the legislature has specifically addressed the availability of a hearing and
other procedural requirements on applications filed on other types of charges. See
Tex. Code Crim. Proc. Ann. art. 11.07 (establishing procedures for applicant
seeking relief from felony judgment that imposes penalty other than death); Id. art.
11.072 (Vernon 2005) (establishing procedures for applicant seeking relief from
felony or misdemeanor judgment ordering community supervision). In Ex Parte
Cummins, the court considered an application filed under article 11.072, which states
that in granting or denying an application, a court "may order affidavits, depositions,
interrogatories or a hearing, and may rely on the court's personal recollection." 169
S.W.3d 752, 755-56 (Tex. App.--Fort Worth 2005, no pet.) (citing Tex. Code Crim.
Proc. Ann. art. 11.072). The court found nothing in article 11.072 requiring the trial
court to conduct a hearing before rendering its decision, and held that the trial court
was not prohibited from considering evidence filed with the application or response
without conducting a hearing. Id. at 757. Although there is no article similar to
article 11.072 addressing the availability of a hearing or other procedural
requirements for the type of application at issue in this case, nothing in the Code
requires a trial court to afford an applicant under section 11.09 to present, in addition
to affidavits and other evidence, live testimony at an evidentiary hearing. 
8. U.S. Const. amend V.
9. Tex. Const. art. I, § 10.
10. In his brief, appellant states that he "adopts by reference each and every, all and
singular, the arguments and authorities contained in his 'Application for Writ of
Habeas Corpus' as filed in the court below and are made reference herein the same
as if copied in full and set forth at length." To the extent appellant attempts to raise
issues with this statement not separately briefed in his appellate brief, he has waived
those issues for our review. See Tex. R. App. P. 38.1(h).