**Opinion issued October 29, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00392-CV

_____

**JACK PERMISON, Appellants**

**V.**

**CARRIE MORRIS & DAVE WARD, Appellees**

---

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 15-DCV-225441**

---

## MEMORANDUM OPINION

Jack Permison rented a room in a house in Fort Bend County from appellee Carrie Morris. Although he left before his lease ended, he was later judicially evicted. He contends that he was forced to leave the house by the actions of the appellees: Carrie Morris and her boyfriend, Dave Ward. Permison sued them both

for: (1) breach of contract; (2) negligence; (3) interference with property rights and constructive eviction; (4) premises liability and gross negligence; (5) failure to refund security deposit; (6) wrongful eviction; (7) common law fraud; (8) willful disclosure of incorrect ownership information; (9) damage to credit; (10) retaliation; (11) exemplary damages; and (12) conspiracy.

The court granted Ward's no-evidence motions for summary judgment and dismissed with prejudice all the claims against him, except for negligence, which was not submitted to the jury at trial. In his first three issues on appeal, Permison challenges the trial court's summary judgments as to Ward. After the close of evidence at trial, the court granted Morris's motions for directed verdict as to several claims against Morris: (1) interference with property rights and constructive eviction; (2) premises liability and gross negligence; (3) common law fraud; and (4) damage to credit. In his fourth issue on appeal, Permison challenges the directed verdicts.

We affirm.

## Background

Carrie Morris advertised for rent a furnished private bedroom and private bathroom "in paradise***free of drama." Morris described the house as "beautiful" and "resort-style," and she advised anyone who is a "a nut case, drama queen,

weirdo, slob, or psycho" to stay away, stating that she wanted a "peaceful relaxing calm beautiful place to come home to after a long day at work."[1]

Permison, a helicopter pilot, responded to Morris's advertisement. Permison and Morris discussed their shared interest in helicopters, and Morris told Permison that her boyfriend, Dave Ward, also was a pilot. Permison agreed to rent the room from Morris beginning March 23, 2015 and continuing month-to-month thereafter. The agreement was not in writing, and Permison paid Morris approximately $1200. After Permison moved in, he became friendly with Morris and Ward.[2] Several days after he moved in, Permison informed Morris that he had found mice in the house. According to Permison, around the same time, Morris made a sexual advance toward him, which he rebuffed. Morris denied this entirely. The friendly text messages between them stopped a few days later.[3]

---

[1]   The appellate record in this case includes transcripts of phone calls involving Permison and either Ward or Morris as well as a copy of the text messages exchanged between Permison and Morris. These documents were submitted as summary-judgment evidence. The trial court did not rule on the defendants' objections that the transcripts and text messages were not properly authenticated and are hearsay.

[2]   Morris invited Permison to go fishing with her children, and Permison invited Morris to take helicopter rides. Ward loaned Permison a car to save him the expense of renting one, saying, "in aviation you are supposed to take care of each other." Permison helped Morris with a computer problem. When Permison found a kitten, Morris helped name it and kept it overnight.

[3]   Morris and Permison communicated by text message and phone call because during the time Permison stayed in Morris's house, Morris was temporarily staying at Ward's house.

About two weeks after Permison moved in, Ward asked him to store some of Morris's personal property in the closet of the master bedroom he was renting.[4] Permison initially agreed, but when he saw the quantity of belongings that had been left outside the house, he refused to move them into his room. Morris later testified that she knew the property would fit because she had previously stored it in the second closet in Permison's room and under the bed.

The next day, Morris asked Permison if he had put the property into the closet, saying she did "not want it left outside." Permison told her there was not "enough room in that closet for all that." Over the next several minutes, Morris sent several acrimonious text messages, told Permison to leave her house, and said she was evicting him. After additional, heated text messages, Morris told Permison to sue Ward, saying, "Dave's the owner of my house. Sue him. He holds the title. He gets the money." Permison told her, "Dave isn't the landlord. You are. My agreement is with you." Morris made some vulgar personal remarks, and she blamed Permison for her current discord with Ward. Permison told Morris that he would leave if she refunded his money and paid for a week's stay at a hotel.

Permison called Ward, and he explained that the property would not fit in his room and that the living situation was not working out. He conceded that he

---

[4]     Ward described the property as "a bunch of blankets and pillows and a little single mattress probably four or five of them."

had to work out the problem with Morris, because "my agreement is with her, she is the owner of the house not you." Permison also suggested that Morris was upset about something other than the property storage. Ward maintained that he was a "third party" the room rental agreement, and he agreed that if the living situation was not working out, Permison should move out.

Several hours after the telephone conversation and text thread, Morris went to the house and placed mothballs in shared spaces, near Permison's bedroom, and outside the house. Permison and another tenant, Mike Brewster, confronted her about the quantity of mothballs she had used and their toxicity. Permison made a video recording of Brewster yelling profanities and demands at Morris, who attempted to placate him. At the end of the video, another man is heard laughing, but Permison denied that he had laughed.

After Morris left, Permison and the other tenants discarded most of the mothballs. Permison slept in the rented room that night, and the next morning, he sought treatment at an emergency room for difficulty breathing, vomiting, and headache. He was diagnosed with "aching headache" and "exposure to chemical inhalation."[5] Permison never returned to the house.

---

[5] A nursing note in Permison's medical record stated: "Spoke with Poison Control, patient to stay away from mothballs and get house cleaned up. Bobby, Poison Control, states that nausea, vomiting, diarrhea and headache are only symptoms of mild exposure and will resolved upon staying away from them."

At some point, Permison told Ward that Morris tried to kiss him, but he rebuffed her advances. While he was in the emergency room, Permison spoke to Ward, advising him that he would "be better off" if he were to "get rid of her." A few days later, Ward and Morris reconciled. Ward then told Permison that he owned the house in which Permison had rented a room and that his name was on the deed.[6] Ward also informed Permison that he had instituted eviction proceedings against him. Morris later testified that Ward was attempting to protect her from harsh treatment by Permison and Brewster.

Four days after Permison left the house, Morris filed a complaint for eviction. Ward's name was initially listed as a landlord on the handwritten form, but it was crossed out and initialed "CM." The justice of the peace court rendered judgment in favor of Morris. Permison appealed to the County Court at Law No. 3, but he later nonsuited his appeal.

Permison later sued both Morris and Ward for (1) breach of contract; (2) interference with property rights and constructive eviction; (3) premises liability and gross negligence; (4) failure to refund security deposit; (5) wrongful eviction; (6) common law fraud; (7) willful disclosure of incorrect ownership information; (8) damage to credit; (9) retaliation; (10) exemplary damages; and

---

[6]    Permison replied, "That's interesting because it doesn't come up that way on the—okay, well that creates a dilemma for me. But you are not back together with Carrie at all?" Ward replied, "Well, she's still at the house. That's all irrelevant."

6

(11) conspiracy. Permison's claims were based on his allegations that both Morris and Ward were the landlords and acted together, that Morris told him to leave when he refused to store her property, and that Morris "placed a deadly amount of mothballs" on the premises.

Permison, Morris, Brewster, and another former tenant, Brenda Jones, testified at trial. Permison testified that he rented a room from Morris, rebuffed her sexual advances, and refused to store her belongings in his room because they would not fit. He also testified that Morris used an excess of mothballs that caused him to suffer an inhalation injury, even though the mothballs were promptly gathered and discarded. Brewster and Jones corroborated Morris's use of mothballs. Morris denied having made sexual advances on Permison. She testified that she used the mothballs as pest control and, having grown up in the country, she described this use as commonplace. She said she never read the warning on the package.

After the close of evidence, the trial court granted directed verdict in favor of Morris on Permison's claims of (1) interference with property rights and constructive eviction; (2) premises liability and gross negligence; (3) common law fraud; and (4) damage to credit. The jury found in favor of Permison on his retaliation claim, and it awarded damages of $1,269.03. The trial court rendered

judgment on the verdict in favor of Permison for $1,269.03 for retaliation and $5,000 in attorney's fees.

## Analysis

On appeal, Permison challenges the pretrial summary judgments in favor of Ward and the directed verdicts in favor of Morris.[7]

### I.      Summary judgment standards of review

"A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). "After an adequate time for discovery," a party may seek summary judgment "on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). A no-evidence summary judgment motion "must state the elements as to which there is no evidence." *Id.* The burden then shifts to the nonmovant to "produce[] summary judgment evidence raising a genuine issue of material fact." *Id.* Once the movant specifies the elements on which there is no evidence, the burden shifts to

---

[7]      The jury found that Permison and Morris had an agreement for the lease of a room for $700 per month, but it found that Morris did not breach the agreement. The jury found that Morris retaliated against Permison, and it assessed damages of $1269.03 and attorneys' fees of $5,000. The jury also found that Morris did not fail to return Permison's security deposit in bad faith. No issue regarding Permison's claims against Ward was submitted to the jury.

8

the nonmovant to raise a fact issue on the challenged elements. *Id.* If the nonmovant fails to produce evidence that raises a genuine issue of material fact, the trial court must grant the motion in favor of the movant. A no-evidence summary judgment will be sustained on appeal "when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered by the nonmovant to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *King Ranch*, 118 S.W.3d at 751 (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960))).

"Summary judgment evidence may be filed late, but only with leave of court." *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996). "Except on leave of court," the nonmovant's summary judgment evidence must be filed and served at least seven days before the summary judgment hearing. TEX. R. CIV. P. 166a(c). "[T]he court has discretion to accept late-filed evidence, but it is not obliged to do so." *Barnett v. Veritas DGC Land Inc.*, No. 14-05-01074-CV, 2006 WL 2827379, at *5 (Tex. App.—Houston [14th Dist.] Oct. 5, 2006, pet. denied)

(mem. op.) (court did not abuse its discretion by refusing to consider evidence attached to motion for reconsideration).

"A trial court may accept summary judgment evidence filed late, even after summary judgment, as long as the court affirmatively indicates in the record that it accepted or considered the evidence." *Mathis v. RKL Design/Build*, 189 S.W.3d 839, 842–43 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Stephens v. Dolcefino*, 126 S.W.3d 120, 133–34 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). "Leave to late-file summary-judgment evidence may be reflected in a separate order, a recital in the summary judgment, or an oral ruling contained in the reporter's record." *Lesikar v. Moon*, No. 14-16-00299-CV, 2017 WL 4930851, at *11 (Tex. App.—Houston [14th Dist.] Oct. 31, 2017, no pet.) (mem. op.).

In his brief, Ward contends that the trial court should have disregarded the evidence filed in response to the first no evidence motion for summary judgment, because it was filed four hours late. *See* TEX. R. CIV. P. 166a(c). Permison's response included a motion for leave to file a late response, which explained that his attorney experienced "technical difficulties" with electronic filing due to the size of the file. He asked that he be permitted to file his response four hours late.

In its order granting the first summary judgment motion in favor of Ward, the trial court stated that it had considered the response. We reject Ward's contention that we must ignore Permison's summary judgment evidence and

10

conclude that it was considered by the trial court. *See Adi v. Rapid Bail Bonding Co.*, No. 01-08-00290-CV, 2010 WL 547474, at \*3 n.6 (Tex. App.—Houston [1st Dist.] Feb. 18, 2010, no pet.) (mem. op.).

Summary judgment evidence may consist of affidavits, the opposing party's discovery responses, pleadings, admissions, stipulations, and authenticated or certified public records. *See* TEX. R. CIV. P. 166a(c). "A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." *Id.* "Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." TEX. R. CIV. P. 166a(f). "Copies of documents attached to a properly prepared affidavit indicating the copies are 'true and correct' are sworn copies." *Coastal Cement Sand Inc. v. First Interstate Credit All., Inc.*, 956 S.W.2d 562, 567 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). But a statement that an unsworn document attached to an affidavit is a "true and correct copy" is not an affirmative indication that the facts contained in the unsworn document are themselves true and correct. *See id.*

11

Unsworn witness statements are not competent summary judgment evidence. *See Kolb v. Scarbrough*, No. 01-14-00671-CV, 2015 WL 1408780, at \*4 (Tex. App.—Houston [1st Dist.] Mar. 26, 2015, no pet.) (citing Judge David Hittner & Lynne Liberato, *Summary Judgments in Texas: State and Federal Practice*, 46 Hous. L. Rev. 1379, 1470 (2010) (evidence such as "unsworn witness statements, expert's reports, or unauthenticated documents" are not "proper summary judgment evidence and cannot defeat a no-evidence summary judgment motion.")); *Coastal Cement Sand*, 956 S.W.2d at 567. Incompetent summary judgment evidence cannot create a genuine question of material fact, and therefore it will not defeat a motion for summary judgment. *See Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013) (conclusory statements); *HighMount Expl. & Prod. LLC v. Harrison Interests, Ltd.*, 503 S.W.3d 557, 568 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *McKeehan v. McKeehan*, 355 S.W.3d 282, 296 (Tex. App.— Austin 2011, pet. denied).

## II.  Ward's no-evidence motions for summary judgment were properly granted.

Permison's first three issues challenge the trial court's rulings dismissing his claims against Ward. He argues that the trial court erred by granting Ward's first and second motions for summary judgment, and, in his third issue, he argues that Ward acted either on his own or with Morris—as coconspirator, co-owner, or agent—to cause his damages. Ward's first no evidence motion for summary

12

judgment challenged the claims made in the second amended petition: breach of contract, negligence, constructive eviction, wrongful eviction, premises liability, failure to refund security deposit, common law fraud, damage to credit, and exemplary damages. The trial court granted the motion and dismissed the challenged claims and Permison's conspiracy claim. When the error of dismissing the unchallenged conspiracy claim was raised, the trial court signed an amended nunc pro tunc order clarifying that the conspiracy claim had not been dismissed. Ward then challenged the conspiracy claim in his second no evidence motion for summary judgment.

## A.    Ward's first no evidence motion for summary judgment

In response to Ward's first no evidence motion for summary judgment, Permison provided his affidavit, photographs of mothballs that had been cleaned up from the house, a transcript of text messages exchanged between him and Morris, and transcripts of phone conversations he had with Morris and with Ward. In his affidavit, he averred that the transcripts of text messages and recorded phone calls were true and correct copies. But he did not aver that the statements in those documents were true and correct.

Permison's claims against Ward depended on a finding that Ward was his landlord, the owner of the house, or that he engaged in a conspiracy with Morris.

13

### 1. Permison provided no evidence that he had a contract with Ward, that Morris was Ward's agent, or that he owned the house.

To prevail on a claim for breach of contract, the plaintiff must establish the following elements: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff because of the breach. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018); *S. Elec. Servs., Inc. v. City of Houston*, 355 S.W.3d 319, 323–24 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). The elements of a valid contract are (1) an offer; (2) an acceptance; (3) a meeting of the minds; (4) mutual consent to the terms; and, in the case of a written contract, (5) execution and delivery of the contract with the intent that it be mutual and binding. *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). "Mutual assent, concerning material, essential terms, is a prerequisite to formation of a binding, enforceable contract." *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 530 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)).

"The necessary elements of written and oral contracts are the same and must be present for a contract to be binding." *Peine v. Elite Airfreight, Inc.*, No. 01-14-00860-CV, 2016 WL 4253836, at *3 (Tex. App.—Houston [1st Dist.] Aug. 11, 2016, no pet.) (mem. op.); *see Wal–Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 555

14

(Tex. App.–Houston [14th Dist.] 2002, no pet.). "In determining the existence of an oral contract, courts look to the communications between the parties and to the acts and circumstances surrounding those communications." *Peine*, 2016 WL 4253836, at *3.

In his motion for summary judgment, Ward argued that there was no evidence of breach of contract, because there was no evidence that he and Permison ever entered into an agreement and because he was not the record owner of the house. In response, Permison relied on text messages from Morris sent approximately two weeks after he moved into the house in which she stated that Ward owned the house, transcribed phone calls he had with Ward, and a posted notice to vacate that identified Ward as a landlord. Permison also asserted that Morris was Ward's agent.

Permison's evidence does not demonstrate that he had a contract with Ward. The text messages, phone calls, and the posted notice do not show that Ward owned the house or entered into an agreement with Permison. These attachments to Permison's affidavit are essentially unsworn statements of a witness, and therefore not competent summary judgment evidence. *See Kolb*, 2015 WL 1408780, at *4. They are insufficient to create a genuine question of material fact regarding whether Ward owned the house or had an agreement with Permison. *See Coastal Cement Sand*, 956 S.W.2d at 567.

Permison argues that the statements made by Ward were judicial admissions. We disagree. Judicial admissions must be made in the course of a judicial proceeding, and the conversations and text message exchanges that Permison relies on were not made in the course of a judicial proceeding. *See Cohen v. Tour Partners, Ltd.*, No. 01-15-00705-CV, 2017 WL 1528776, at *5 (Tex. App.—Houston [1st Dist.] Apr. 27, 2017, no pet.) (mem. op.); *H2O Sols., Ltd. v. PM Realty Grp., LP*, 438 S.W.3d 606, 617 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

None of Permison's proffered summary judgment evidence supports an inference of any offer made by Ward or acceptance by Permison, nor does it demonstrate a meeting of the minds or mutual assent to the terms of a contract except between Permison and Morris. *See Prime Prods.*, 97 S.W.3d at 636.

Permison argues that Morris was acting as Ward's agent. But an "agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)." *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007); *see also Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 847 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Nothing in the summary judgment evidence indicates that Ward communicated to Morris or to Permison that Morris was acting as his agent. We conclude that the trial court properly granted summary

judgment as to breach of contract. Damage to credit is not an independent tort in Texas, rather it is an element of breach of contract damages. *See Gabriel v. Associated Credit Union of Texas*, No. 14-12-00349-CV, 2013 WL 865577, at *4 n.8 (Tex. App.—Houston [14th Dist.] Mar. 7, 2013, pet. denied) (mem. op.) (citing *Mead v. Johnson Grp. Inc.*, 615 S.W.3d 685, 688 (Tex. 1981)). Accordingly, the trial court did not err by dismissing Permison's claim for damage to credit.

## 2. Permison's other claims fail because they all depend on findings that Ward was the landlord and owner of the house.

Several of Permison's other claims also fail because there is no evidence that Ward was Permison's landlord or the owner of the house. These include constructive eviction and interference with property rights,[8] wrongful eviction,[9]

---

[8] Constructive eviction requires conduct by the landlord that "materially interferes with the tenant's beneficial use of the premises." *Richardson v. SV Almeda I Ltd. P'ship*, No. 01-11-01004-CV, 2013 WL 4680392, at *7 (Tex. App.—Houston [1st Dist.] Aug. 29, 2013, no pet.) (mem. op.) (stating elements of cause of action for constructive eviction); *see Pinter v. Asafi Law Firm*, No. 01-12-00048-CV, 2012 WL 5458426, at *4 (Tex. App.—Houston [1st Dist.] Nov. 8, 2012, no pet.) (mem. op.) ("A cause of action for tortious interference with the peaceful use and enjoyment of property is a claim for intentional interference with property rights.").

[9] "To establish a claim for wrongful eviction, a plaintiff must show that (1) she had an unexpired rental contract with the landlord; (2) she occupied the premises; (3) the landlord evicted her; and (4) she suffered damages attributable to the eviction." *Green v. Fed. Nat'l Mortgage Ass'n*, No. 01-18-00258-CV, 2019 WL 1716347, at *3 (Tex. App.—Houston [1st Dist.] Apr. 18, 2019, pet. filed) (mem. op.); *see Hill v. Wells Asset Mgmt., Inc.*, No. 05-15-00096-CV, 2016 WL 4039256, at *2 (Tex. App.—Dallas July 26, 2016, no pet.) (mem. op.); *Mckenzie v. Carte*, 385 S.W.2d 520, 528 (Tex. Civ. App.—Corpus Christi 1964, writ ref'd n.r.e.).

17

premises liability,[10] failure to refund the security deposit,[11] willful disclosure of incorrect ownership information,[12] and retaliation.[13] Because Permison did not raise a genuine question of material fact as to whether Ward was Permison's landlord or the owner of the house, we hold that the trial court properly granted summary judgment as to constructive eviction and interference with property rights, wrongful eviction, premises liability, failure to refund the security deposit, willful disclosure of incorrect ownership information, and retaliation.

"The elements of common law fraud are: (1) a material representation that was false when made; (2) when the representation was made, the speaker knew it

---

[10]   When an invitee sues a premises owner, he must prove: (1) the property owner had actual or constructive knowledge of the condition causing the injury; (2) the condition posed an unreasonable risk of harm; (3) the property owner failed to take reasonable care to reduce or eliminate the risk; and (4) the property owner's failure to use reasonable care to reduce or eliminate the risk was the proximate cause of his injuries. *Henkel v. Norman*, 441 S.W.3d 249, 251–52 (Tex. 2014); *Kyles v. S. Loop 2626, LLC*, No. 01-17-00355-CV, 2018 WL 3581014, at *3 (Tex. App.—Houston [1st Dist.] July 26, 2018, no pet.) (mem. op.).

[11]   "A landlord who in bad faith retains a security deposit in violation of this subchapter is liable for an amount equal to the sum of $100, three times the portion of the deposit wrongfully withheld, and the tenant's reasonable attorney's fees in a suit to recover the deposit." TEX. PROP. CODE § 92.109(a).

[12]   "A landlord acts in bad faith and is liable according to this subchapter if the landlord gives" incorrect information about the property's ownership or management as required by the Property Code. TEX. PROP. CODE §§ 92.204, 92.205(a).

[13]   The Property Code prohibits a landlord from taking certain actions because a tenant has exercised certain legal rights. *See* TEX. PROP. CODE § 92.331.

was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the speaker made the representation with the intent that the other party should act upon it; (4) the party actually and justifiably relied on the representation; and (5) thereby suffered injury." *DiBello v. Charlie Thomas Ford, Ltd.*, 288 S.W.3d 118, 122 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing *Ernst Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). Although no element of the cause of action requires a defendant to be a landlord, Permison alleged that Ward committed fraud by filing for a wrongful eviction and presenting "false information leading to a judgment" against him in the eviction case. In his response to Ward's motion for summary judgment as to common law fraud, Permison argued that Ward had a duty to use ordinary care in maintaining the premises and by warning of a defect because he was the landlord and an owner of the property. He did not identify any evidence that supported his argument or that showed he took any action in reliance on a representation made by Ward. Because Permison failed to come forward with evidence of common law fraud, the trial court did not err by granting summary judgment on that claim.

## B.    Ward's second no evidence motion for summary judgment

In his second no evidence motion for summary judgment, Ward argued that there was no evidence to support Permison's conspiracy claim. The Texas Supreme Court has defined the elements of civil conspiracy as: "(1) two or more

19

persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)).

Civil conspiracy is not an independent tort, but a derivative tort that depends on participation in some underlying tort for which the plaintiff seeks to hold the defendant liable. *Agar Corp.*, 2019 WL 1495211, at *4; *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996); *see Vertex Servs., LLC v. Oceanwide Houston, Inc.*, 01-18-00125-CV, 2019 WL 3783115, at *10–11 (Tex. App.—Houston [1st Dist.] Aug. 13, 2019, no pet.). Civil conspiracy therefore "survives or fails alongside" the underlying tort. *Agar Corp.*, 2019 WL 1495211, at *3.

Permison alleged a civil conspiracy between Ward and Morris to wrongfully evict him. Having concluded that Permison's wrongful eviction claim did not survive summary judgment, we further conclude that his civil conspiracy claim likewise fails. *Id.* We hold that the trial court did not err by granting Ward's second motion for summary judgment.

We overrule Permison's first three issues.

20

**III. Morris's motions for directed verdict were properly granted.**

At trial, the court granted Morris's motion for a directed verdict as to Permison's claims for: (a) constructive eviction; (b) premises liability and gross negligence; (c) common law fraud; and (d) damage to credit. Permison abandoned his claim for conspiracy.

A trial court may order a directed verdict in favor of a defendant when: (1) a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery; or (2) the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Internacional Realty, Inc. v. 2005 RP W., Ltd.*, 449 S.W.3d 512, 548 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). When a trial court grants a directed verdict based on the evidence, we employ a legal sufficiency standard of review on appeal. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) (holding that standard of review for legal sufficiency challenge applies to review of directed verdict); *Austin Bridge & Rd., LP v. Suarez*, 556 S.W.3d 363, 376 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). When a trial court grants a directed verdict based on a question of law, we review that ruling de novo. *Id.*

On appeal, Permison argues that the trial court erred by granting the motion for directed verdict in favor of Morris. We look to the evidence introduced at trial in considering this issue.

## A.    Constructive eviction.

The elements of a cause of action for constructive eviction are (1) an intention on the part of the landlord that the tenant shall no longer enjoy the premises, (2) a material act by the landlord that substantially interferes with the tenant's intended use and enjoyment of the premises, (3) an act that permanently deprives the tenant of the use and enjoyment of the premises, and (4) abandonment of the premises by the tenant within a reasonable time after the commission of the act. *Richardson v. SV Almeda I Ltd. P'ship*, No. 01-11-01004-CV, 2013 WL 4680392, at *7 (Tex. App.—Houston [1st Dist.] Aug. 29, 2013, no pet.) (mem. op.). The evidence at trial was that Morris placed many mothballs in common areas of the house and outside the house to control pests, and the tenants then removed the mothballs when she left. The evidence also showed that mothballs sublimate from solid to gas, temporarily emitting a noxious smell. But there was no evidence that the placement of the mothballs permanently deprived Permison of the use and enjoyment of the premises. Because there was no evidence of at least one element

of constructive eviction, we hold that the trial court did not err by granting directed verdict in favor of Morris on this claim.[14]

## B.    Premises liability and gross negligence.

"Premises liability is a special form of negligence where the duty owed to the plaintiff depends upon the status of the plaintiff at the time the incident occurred." *W. Investments, Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). Ordinarily, a landlord has no duty to tenants for dangerous conditions on the leased premises. When landlord retains possession or control of a portion of the leased premises, however, the landlord owes the tenant the same duty owed to an invitee. *See Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 202 (Tex. 2015); *Williams v. Angelopoulous*, No. 01-99-00060-CV, 2000 WL 1641127, at *2 (Tex. App.— Houston [1st Dist.] Nov. 2, 2000, no pet.) (mem. op.). A "landowner's duty" is to "make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." *Austin*, 465 S.W.3d at 203.

In this case, the dangerous condition that Permison alleged was Morris's excessive use of mothballs. This condition was not concealed; Permison and the

---

[14]    In his third amended petition, Permison included a subheading entitled, "Interference with Plaintiff's Property Rights and Constructive Eviction," however the substance of the pleading was a cause of action for constructive eviction.

other tenants were aware. We conclude, therefore, that the trial court did not err by granting the motion for directed verdict as to premises liability.

Permison also sought damages for gross negligence. He alleged that Morris's use of mothballs was gross negligence. Gross negligence means "an act or omission involving subjective awareness of an extreme degree of risk, indicating indifference to the rights, safety, or welfare of others." *City of Waco v. Kirwan*, 298 S.W.3d 618, 623 (Tex. 2009) (quoting *State v. Shumake*, 199 S.W.3d 279, 287 (Tex. 2006)). At trial Morris testified that she was not aware of the health risks of using mothballs, she had never read the package, and she had previously used mothballs for pest control, even near her asthmatic child. There was no evidence in the record that Morris was subjectively aware of an extreme risk arising from the use—or overuse—of mothballs. We conclude the trial court did not err by granting a directed verdict in favor of Morris on gross negligence.

## C.    Common law fraud

"The elements of common law fraud are: (1) a material representation that was false when made; (2) when the representation was made, the speaker knew it was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the speaker made the representation with the intent that the other party should act upon it; (4) the party actually and justifiably relied on the representation; and (5) thereby suffered injury." *DiBello*, 288 S.W.3d at 122.

Permison asserts that Morris made two actionable misrepresentations: (1) inconsistent representations about who owned and managed the house and (2) the representation that the house would be "drama free." As to both, there was no proof introduced at trial that Permison suffered any injury as a result of the inconsistent statements about who owned the house or as a result of "drama." The evidence showed that Permison suffered injury from the inhalation of vapors sublimated from mothballs and then decided to leave the house. Because there was no evidence that Permison was injured by his reliance on the alleged misrepresentations, we conclude that the court did not err by granting a directed verdict on common law fraud.

## D.     Damage to credit.

Permison alleged that the fact of the judicial eviction damaged his credit. Damage to credit is an element of contract damages and not an independent tort in Texas. *See Gabriel*, 2013 WL 865577, at *4 n.8. The trial court granted a directed verdict on Permison's damage to credit claim, but it submitted his cause of action for breach of contract. The trial court found in favor of Morris on the breach of contract claim. Thus, any possible error from the grant of the motion for directed verdict was harmless.

\* \* \*

Having considered each of the claims as to which the court granted a directed verdict, we overrule Permison's fourth issue.

## Conclusion

We affirm the judgment of the trial court.


Peter Kelly
Justice


Panel consists of Justices Kelly, Hightower, and Countiss.